Good morning. May it please the Court, Jonathan Libby appearing on behalf of Roberto Hernandez Guzman. Your Honors, the District Court procedurally erred in this case by miscalculating Mr. Hernandez's criminal history points. First, the District Court plainly erred by counting the prior sentences in paragraphs 18 and 24 of the pre-sentence report separately instead of as a single sentence. This is the argument that if had the sentencing occurred before the same court on the same day, it would have been scored differently? No. These, in fact, were sentenced on the same day. Was it a violation of probation? Correct. Or parole or supervised release? One of them was a probation violation. And then the underlying, whatever, the new conviction? That's correct. All right. That's correct. I thought the guidelines directly addressed that and said you treat them separately. Well, what the guidelines say, and Your Honor, I assume, is referring to 4A1.2K and Application Note 11. Yeah. What Application Note 11 says is that the convictions should be computed separately. It does not say that they are counted separately. Well, what's the difference? I mean, if you're computing, aren't you counting? Well, there's two steps. First, you have to compute the relevant criminal history points assigned to all of the prior sentences. Right? Right. And 4A and what Note 11 and 4A1.2K discuss is what you do when you have a revocation of probation or parole. But doesn't the word separately modify computed or counted? Well, no, Your Honor, because here what this note and that guideline are referring to is you have to determine the underlying conviction and the parole violation and how many points would that count for. That's computing the number of points based on that. So here we have a situation where the sentence imposed on the revocation was added to the underlying conviction and resulted in three points being assigned there. I guess from a legal policy standpoint, why shouldn't you count them separately? Because you've got the original underlying conviction, and now you have new misconduct, which in itself is a separate, if you will, new crime. Why should the defendant, in essence, be treated as if they merge and become simply only one? Well, and that's where we get to the difference between computing in that section, that provision, and then when we get to 4A1.282. Well, let me ask the question differently. What's unfair about, in essence, punishing the defendant more harshly? Because while he was still on supervised release from his prior conviction, he is now engaged in new criminal conduct for which he is also going to be punished. Sure. And he would be, and that's what 4A1.2k deals with, that if, in fact, it then results in a longer sentence on the underlying, then you would increase the number of points, and that's what happened here. But then we turn to 4A1.2, and then we have the specific rules with respect to whether there was an intervening arrest or not between the two offenses. And whether the sentences were imposed on the same day. Here, we know that there was no intervening arrest because, in fact, he did not commit the parole replication after he committed the new crime. They were committed simultaneously. Well, is that right? I mean, this is the guy who was released and deported to Mexico, right? He was. Yeah. And then he's subsequently found in the United States, which is a new violation. Right? He's paroled from his prior California prison sentence. The government takes the position that he's still on active parole supervision of the Los Angeles County Probation Department. You take the position that by deporting him, the parole supervision, I don't know what the word would be, evaporated, terminated by operation of whatever principle it would be. But we still have a new violation. He's come back into the United States in violation of 1326. Right. And that would be then dealt with by 4A1.1D in terms of whether he then gets additional points assessed. But we still have to look at the specific language of 4A1.2A2 and whether or not we count this replication sentence separately from the new conduct sentence. And we would submit the plain language of 4A1.2A2 makes clear that they have to be counted together. What the language says is prior sentences always are counted separately if the sentences were posed for offenses that were separated by an intervening arrest. It then explains. An intervening arrest is where the defendant is arrested for the first offense prior to committing the second offense. And as I just said, they, in fact, were committed at the same time. So if that's the case, if there's no intervening arrest under the plain language of that guideline, if the sentence was then imposed on the defendant. But his prior sentence was the sentence for which he had been sent to prison, is it not? His prior sentence, he had received a probationary sentence. He then violated probation. Yeah. And was sent to prison. That's correct, on the probation. So why isn't that a prior sentence? And so the sentence on the new charge, the Federal charge of illegal reentry, is a separate offense, which the statute says is counted separately. Your Honor, and I'm sorry, and perhaps I confused the Court. Was this argument raised before the trial court? This was not. This is review for plain error. Your Honor, it's not based on the new conduct in the Federal case that we're reflecting towards now. We're talking about paragraphs 18 and 24. Okay? And it's paragraph 18 and 24 that it was the arrest in paragraph 24, the unlawful taking of a vehicle, that was the new conduct for purposes of this issue. Can I turn to a different issue before you run out of time? There is a question in the sentencing transcript as to whether there was an objection made to his being on continuing, or excuse me, under a criminal justice sentence. Correct. And as I read the transcript, it appears that the objection was not to that aspect. The objection was I couldn't have committed a parole violation on November 5 because I was in prison, and therefore I couldn't commit it. And then the government says, well, no, that's not the basis for the two-point enhancement. It's because he was under a criminal justice supervision. Sure. And then the Court says, okay, I saw fine, and I adopt the pre-sentence report's language, and there's no objection made. So don't we review that issue as well for plain error? No, Your Honor. Because Mr. Handis himself made the objection to being subject to these two additional points. But not on that ground, I guess is the concern. Well, and I guess what it comes down to is he was making a pro se objection, and pro se litigants' objections are to be liberally construed. But there's no ambiguity in what the basis of his objection was. The objection was you can't tag me for that because I'm in prison, and therefore I couldn't have committed a parole violation. And then the government says that's not the reason, and he doesn't say anything. But then I think you're not holding this pro se litigant to the same standard that you are an attorney and not, in fact, liberally construing what he was trying to say. But you don't need to be a lawyer to understand the difference between the two. Well, with respect, I think actually you do need to be a lawyer to understand the difference between the two. The fact is that he was very clear that he should not be subject to these two additional criminal history points for under this provision. That he was very clear on. Did he perhaps give the precise objection, the very specific objection? I think you're holding him to a much higher standard than pro se litigants should be held to. But it was a different objection. That's the concern I guess I have. And he had a lawyer who was standing right there next to him, and his lawyer didn't say anything. Well, that's true. And the lawyer's conduct is obviously a separate issue. But here, Mr. Hernandez clearly was objecting to assessment of those two additional points. Let me follow up on that, if I may. If we were to agree with you on that point, and even if we were to agree with you on this argument, that those two additional points under the criminal justice sentence argument should not have been added. But if that were the only argument I were to agree with you on, then we would take 16 points, criminal history points would be reduced by two to 14. That's still a Category 6. Is there any basis at all in the law to remanding for additional sentencing or for further sentencing if we were simply to find that those two points should not have been added, but he still, under the plea agreement, would have a total offense level of 19 and a criminal history category of 6? Well, yes. We were arguing with the binding plea agreement here. And so if the court were to adopt the binding plea agreement, then it wouldn't make a difference. But the court was not obligated to adopt the binding plea agreement. And the court could have made the determination that, well, 14 points is different from 16 points. And if it's only 14 points, I may reject the binding plea agreement and impose a lower sentence. Give me a case law that supports that, because the 14 versus the 16, it still yields a Category 6. That's true. And I don't have a case law at my fingertips, but it's just the basic principle that a court is not obligated to accept the plea agreement. And it could have had an effect when considering those 3553 factors. Well, was the court asked to do that? No. No, Your Honor. Unless the court has additional questions, I'll reserve the last 30 seconds. All right. Thank you. I'm actually over. I see. Thank you. Good morning. May it please the Court. Christina Shea for the United States. Your Honors, there are three issues on appeal here. These issues are controlled by this Court's case law and the plain language of the guidelines.  The first issue is how to count defendant's 2004 burglary conviction, his 2006 probation violation, and his 2006 conviction for unlawful taking and driving of a vehicle. Counsel, can I jump right ahead to that point that I was raising with appellant's counsel? Yes, Your Honor. If you assume that appellant makes a fair point on the criminal justice sentence, and I know you have an argument against it, but let's assume you lose on that argument, but you win on the other arguments. Therefore, two points need to get reduced from the criminal history calculation. It goes from 16 to 14, but that's still a Category 6. Under the plea agreement, it would still then be 19 total offense points. What results should follow under that assumption? Your Honor, I believe that the my first answer is that the government's position is that this Court is reviewing for plain error, and so it would not need to reverse on that ground because there's nothing that would affect substantial rights because it would be still a Category 6. But how do we know that? I mean, we don't know whether or not the district judge would have done something differently had he seen 14 criminal history points instead of 16, even though it still would be Category 6. I think the transcript is clear, Your Honor, that everyone before the district court is proceeding under the idea that this is a binding plea agreement in which the government has made a fast-track concession to the defendant. In fact, when described as appeal rights, the defendant said, oh, but I still get to appeal my criminal history, as opposed to I get to overturn the entire sentence. And on that third issue, on whether or not a defendant was under a criminal justice sentence, the district court here did not err at all, let alone plainly err. As stated in the PSR, and there's no objection to this fact in the PSR, and the Court's entitled to rely on this uncontested fact, it wasn't until June 19th of 2012 that the State revoked his community supervision from his 2010 grand theft conviction. That is undeniably one month after he commits his Federal offense, which means he must have been under a criminal justice sentence at the time he committed the Federal offense. And they did more than that. They issued a bench warrant for the rest, which is still outstanding, right? Yes, Your Honor. They issued a no-bail bench warrant for a defendant, though Los Angeles Court did. And so those two points, Your Honor, were properly added. On the first issue, defense counsel makes a distinction between the word counted and computed. The government submits that this is squarely rejected by this Court in Palmer, where the Court uses counted and computed interchangeably. The facts of that case are virtually identical. The Court in that case rejected defendant's argument that 4A1.282 controls. Instead, they read Application Note 11 as consistent with 4A1.282 and applied Application Note 11. And what that means is exactly what Judge Tolman said, which is that when a sentence is computed for revocation of probation at the same time as for conviction of a new offense, sentence on the new offense is computed separately from the sentence opposed for revocation of probation. Can I take you back to criminal justice sentences? I get your Palmer point. Yes, Your Honor. What's the point of adding two points for someone who is under a criminal justice sentence when that would be calculated because they can't comply with conditions of probation because they've been deported? What's the point of adding two points there? Your Honor, the point of adding two points in that case is that he was he violated the conditions of his probation by coming back to the United States. And so by getting that Federal offense and returning to the United States, he frankly has breached the Court's trust. The State court released him early, said you're under a criminal justice sentence. He's deported back to Mexico. One of the conditions is that he not commit another offense. And by returning, he commits the Federal offense of 1326. And that is a breach of the Court's trust, which is separate and apart from his 1326 offense. And I believe that the Governor's 28-J letter regarding Ybarra-Gonzalez forecloses the second issue raised on appeal. And with that, Your Honors, unless there's any further questions, I'll submit. Thank you very much. Thank you. Your Honors, I know I'm over time. If I could just address Palmer. Palmer was decided under a very different 4A1.2A2. The language was completely changed six years ago. And in Palmer, it talks about cases and convictions because 4A1.2A2 talked about cases and whether cases were related, not sentences. So are you arguing that what Palmer is now? Palmer is not controllable. Okay. So can we distinguish it on that ground, or do we have to go in bank to declare that the rule has changed? I think Palmer is simply not applicable because it was a different section, 4A1.2A2. 4A1.2A2 now only talks in terms of sentences, not cases, not related cases, not convictions. And so the entire analysis in Palmer was based on something we don't have. The only thing that gives me pause about your argument is that if Palmer stands for the proposition that computed and counted are used interchangeably, which is what I was asking you about when you were opening, then it seems to me that's still good law because it's essentially an interpretation of what the words mean, and the words have not changed in terms of counted and computed. Well, except it was doing so in the context of the old language of 4A1.2. And so it talked about how two things are clear. We're talking about whether the conviction, excuse me, whether the conviction merged because that was what was relevant then, not whether the sentences merged. And so it's a completely different analysis now. And unless the Court has additional questions. Thank you. Well, this is all the product of the sentencing guidelines that were declared unconstitutional. But the courts are required to follow them. It's an abominable part of our jurisprudence. And maybe one of these days people will wake up and go back to the old system where discretion was placed on the sentencing judge and not on the prosecutors. But that's the state of affairs today. Thank you. Thank you. Thank you.
judges: Simon, Pregerson, Tallman